
02/21/2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ALBERT DWAYNE ZAMORSKY | § | Case No. 02-13215 |
| and SUSAN FRAIJO | § | |
| | § | |
| Debtors | § | Chapter 7 |
| GUIDO HANAK and | § | |
| MARY CAROLYN HANAK | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| v. | § | Adversary No. 04-1090 |
| | § | |
| ALBERT DWAYNE ZAMORSKY | § | |
| and SUSAN FRAIJO | § | |
| | § | |
| Defendants | § | |

### **MEMORANDUM OF DECISION**[1]

This matter is before the Court to consider the Motion for Contempt and Sanctions Against Fidelity National Insurance Company ("Fidelity") for its failure to timely comply with a third party subpoena commanding the production of certain specified documents. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[2]

---

[1] This Memorandum of Decision is not designated for publication and shall not be considered as precedent, except under the respective doctrines of claim preclusion, issue preclusion, the law of the case or as to other evidentiary doctrines applicable to the specific parties in this proceeding.

[2] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a). The Court has the authority to enter a final order in this adversary proceeding since it constitutes a core proceeding as contemplated by 28 U.S.C. §157(b)(2)(A), (I), (J), and (O).

## Background

On April 8, 2005, the Plaintiffs served a subpoena upon Fidelity via first class mail and by certified mail, return receipt requested. The subpoena commanded Fidelity to produce certain documents pertaining to the Defendants' alleged misappropriation of certain insurance proceeds from Defendants' insurance company, Omaha Property and Casualty Insurance Company ("Omaha"), over which Fidelity was thought to have custody and control. The subpoena required Fidelity to produce the documents to the Plaintiffs on or before May 11, 2005. After a series of phone calls and e-mails, and two extensions of time granted to Fidelity by the Plaintiffs, the production deadline was extended to June 17, 2005. After that 36-day extension, Fidelity finally produced a small amount of documents which it claimed was the "complete copy of Fidelity National Title Insurance Company's Flood Policy File," but it kept denying to the Plaintiffs that it had possession and control over any Omaha documents that actually related to the flood insurance claim submitted to Omaha by the Defendants. On June 17, 2005, the Plaintiffs filed the present motion. On July 15, 2005, 65 days after the issuance of the subpoena, Fidelity responded to the sanctions motion and also produced a second set of documents, but again claimed that it could not obtain any further documents relating to the flood insurance claim. Upon determining that the Plaintiffs intended to continue prosecution of the sanctions motion, Fidelity finally produced the requested insurance claim documents on August 3, 2005, 84 days after the issuance of the subpoena and 27 days prior to a

hearing on this sanctions motion. Fidelity asserts that its failure to timely comply with the subpoena was not willful and that sanctions are not warranted.

## Discussion

The only authority in the Federal Rules of Civil Procedure for the imposition of sanctions against a non-party for failure to comply with a subpoena duces tecum is Rule 45(e). That rule provides that "[f]ailure by any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued." FED. R. CIV. P. 45(e) as incorporated into bankruptcy proceedings by FED. R. BANKR. P. 9016. "Indeed, the judicial power to hold in contempt a non-party who has failed to obey a valid subpoena is the primary mechanism by which a court can enforce a subpoena." *Calabro v. Stone*, 224 F.R.D. 532, 533 (E.D.N.Y. 2004) (citations omitted).

Fidelity acknowledges that the subpoena was properly issued and timely served. The only excuse offered by Fidelity for its failure to comply with the subpoena in a timely manner is the assertion that the documents were the property of Omaha, which Fidelity originally asserted was "not a Fidelity company," and, as a result, the requested documents were not immediately accessible by Fidelity. However, Mr. Shaddox, who identified himself as a vice-president of "Fidelity National Financial," refused to make such bald assertions and was consistently vague in his testimony regarding the relationship between Fidelity and Omaha. He paused and hesitated on numerous questions regarding the relationship between the two companies, and carefully never

directly represented to the Court that Fidelity was not in possession and control of, or could easily gain access to, Omaha documents. Conversely, the Plaintiffs' insurance agent, Karen Weller, testified that all of the transactions by her agency regarding the procurement and maintenance of the flood policy, though issued ostensibly through Omaha, were handled from start to finish by Fidelity representatives and that, to the best of her knowledge, Fidelity had purchased Omaha. Yet Mr. Shaddox mysteriously claimed, despite his lofty job title, to be without knowledge of the precise relationship or interaction between the two companies, and refused to either confirm or deny Ms. Weller's representation about Fidelity's purchase of Omaha. However, Ms. Weller's testimony regarding Fidelity's control of Omaha is corroborated by other evidence that, on more than one occasion, including fraud inquiries made by Fidelity to the Beaumont Police Department's Fraud Unit, persons identifying themselves as Fidelity personnel utilized Omaha stationery to make inquiries regarding the very claim over which the Plaintiffs have sued. Other evidence indicated that the same person might be referenced as an Omaha employee in one instance and a Fidelity employee in another.

    By a preponderance of the evidence, the Plaintiffs have convinced this Court that Fidelity possessed the capability of timely responding with appropriate documentation to the demands imposed by the subpoena but, for reasons which still remain unexplained, did not do so until the Plaintiffs filed the motion for sanctions. Fidelity never sought any type of protective order because of any asserted barrier to Omaha documents. Instead it

simply strung the Plaintiffs along with repeated denials and scant production until the Plaintiffs were forced to expend funds to compel the production eventually tendered by Fidelity. Fidelity is held in civil contempt and the Court will award the Plaintiffs the sum of $800,[3] plus expenses of $63.10, pursuant to FED. R. CIV. P. 45(e), which shall be paid by Fidelity to the Plaintiffs' counsel within thirty days. Any failure by Fidelity to pay the award in a timely manner shall subject Fidelity to further sanctions upon request of the Plaintiffs. All other relief requested by the motion is denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[4] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 2/21/2006

*Bill Parker*

THE HONORABLE BILL PARKER
CHIEF UNITED STATES BANKRUPTCY JUDGE

---

[3] That constitutes a reduction of one hour of attorneys' time at the reasonable rate of $165 per hour.

[4] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.